GERALD P. WILLIS, Administrator of the Estate of DAVID S. WILLIS, Deceased v. DUKE POWER COMPANY, a Corporation

No. 133

(Filed 4 November 1976)

1. **Contempt of Court § 8; Appeal and Error § 6— failure to comply with discovery order — contempt of court — immediate appeal**

When a civil litigant is adjudged to be in contempt for failing to comply with an earlier discovery order, the contempt proceeding is both civil and criminal in nature, and the order is immediately appealable for the purpose of testing the validity both of the original order and the contempt order itself, notwithstanding the contemnor was not immediately punished, where the contemnor can purge himself of the adjudication of contempt only by, in effect, complying with the discovery order of which he essentially complains. G.S. 5-1(4); G.S. 5-2; G.S. 5-8; G.S. 1-277; G.S. 7A-27(d)(1).

2. **Rules of Civil Procedure § 34— production of documents — showing required**

Rule 34 requires that as a prerequisite of production, documents must be (1) "designated," (2) "within the scope" of Rule 26(b), and (3) in the "possession, custody, or control" of a party from whom they are sought.

3. **Rules of Civil Procedure §§ 33, 34— interrogatories asking party to "identify" documents — production of such documents**

Since a proper function of interrogatories is to obtain the information necessary to make a showing that the prerequisites for the production of the documents have been established, plaintiff's interrogatories properly asked defendant to "identify" certain documents; however, it was error for the trial court to order production of any documents before the documents had been (1) further "identified" by defendant, or (2) further "designated" by plaintiff.

4. **Rules of Civil Procedure § 34— production of documents — showing of good cause**

An order for the production of documents under former Rule 34 was erroneous where it was not based upon either a showing or finding of good cause.

5. **Rules of Civil Procedure § 37— failure to make discovery — contempt of court — erroneous order**

An order holding defendant in contempt for (1) failure to comply with an order to produce documents and (2) failure to answer a specified interrogatory was erroneous where the order for the production of documents was unlawful and the record shows a good faith effort on the part of defendant to answer the interrogatory.

6. **Rules of Civil Procedure § 26— discovery — information in claim files relating to shocks or burns**

Information in all of defendant's claims files relating to shocks or burns wherever and whenever they may have occurred would be

Willis v. Power Co.

neither relevant to plaintiff's claim against defendant nor likely to lead to relevant information and would fall outside the scope of discovery provided by Rule 26(b)(1).

**7. Rules of Civil Procedure § 26— response to interrogatories — identification of documents**

In responding to interrogatories requesting defendant to identify certain documents, defendant should have identified those documents which met the relevancy requirements of Rule 26(b)(1) even if the documents themselves may not be discoverable because they are privileged or fall within the trial preparation immunity of Rule 26(b)(3) since the question of the discoverability of the documents cannot be properly determined until they have been appropriately identified and designated.

**8. Rules of Civil Procedure § 26— discovery — test of relevancy**

The test of relevancy under Rule 26 is not the stringent test required at trial, the rule being designed to allow discovery of any information "reasonably calculated to lead to the discovery of admissible evidence."

**9. Rules of Civil Procedure § 26— discovery — relevant material — protective order**

While the relevancy requirements of Rule 26 are mandatory, a discretionary protective order may be granted under Rule 26(c) even as to relevant material.

**10. Rules of Civil Procedure § 34— production of documents — new rule — good cause need not be shown — protections to responding party**

The new procedure for obtaining production and inspection of documents has eliminated the requirement of a court order based upon motion and good cause, since new Rule 34 simply requires serving the request for production upon the other party; however, the party from whom discovery is sought is afforded protections by the designation, scope, and possession requirements of Rule 34, the exemption of privileged matter in the scope provision of Rule 26, the allowance of protective orders, and the extended "work product," or trial preparation, immunity of Rule 26(b)(3).

**11. Rules of Civil Procedure § 34— production of documents — "designation" requirement**

The "designation" requirement of Rule 34 does not necessarily mean that documents must be separately described, since designation by categories may be sufficient depending upon the categories utilized.

**12. Rules of Civil Procedure § 37— failure to make discovery — sanctions — order compelling discovery**

If a party files answers or objections to interrogatories, or serves a written response to a request for inspection, no sanctions under Rule 37(d) may be obtained and the proper procedure for the party seeking discovery is to obtain an order compelling discovery under Rule 37(a).

---

Willis v. Power Co.

---

**13. Rules of Civil Procedure § 26— discovery — attorney-client privilege**

The protection of the attorney-client privilege under Rule 26 is absolute and is identical in scope to the traditional privilege.

**14. Rules of Civil Procedure § 26— work product or trial preparation immunity**

The "work product," or trial preparation, exception of new Rule 26(b)(3) goes considerably beyond the protection accorded under the old rule and, although not a privilege, the exception is a "qualified immunity" and extends to all materials prepared "in anticipation of litigation or for trial by or for another party or by or for that other party's consultant, surety, indemnitor, insurer, or agent."

**15. Rules of Civil Procedure § 26— trial preparation immunity — materials prepared in anticipation of litigation**

The trial preparation immunity of Rule 26(b)(3) applies not only to materials prepared after the other party has secured an attorney, but to those prepared under circumstances in which a reasonable person might anticipate a possibility of litigation; however, the protection does not extend to materials prepared in the ordinary course of business or to facts known by any party.

**16. Rules of Civil Procedure § 26— trial preparation immunity — materials prepared in other litigation**

The trial preparation immunity of Rule 26(b) protects any materials prepared in anticipation for any litigation by the party from whom discovery is sought, including materials prepared for litigation between different parties which was terminated prior to the pending case.

**17. Rules of Civil Procedure § 26— materials subject to trial preparation immunity — discovery — showing of substantial need and undue hardship**

A plaintiff may be allowed discovery of materials subject to the trial preparation immunity upon a showing of "substantial need" and "undue hardship" involved in otherwise obtaining the substantial equivalent thereof, and in the interests of justice the trial judge may require an *in camera* inspection and may allow discovery of only parts of some documents; however, no discovery whatsoever may be obtained of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party" concerning the case at bar or of the work product of attorneys in the case at bar.

ON petition by defendant for discretionary review of the decision of the Court of Appeals, 26 N.C. App. 598, 216 S.E. 2d 732 (1975), dismissing defendant's appeal of the order of *Falls, J.,* 6 January Session of MECKLENBURG Superior Court. Docketed and argued as No. 103 at the Fall Term 1975.

*William E. Poe, William F. Farthing, Jr., William I. Ward, Jr., William E. Poe, Jr., and Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, Attorneys for defendant appellant.*

*Cansler, Lockhart, Parker & Young, P.A., by Thomas Ashe Lockhart, Joe C. Young and John M. B. Burtis, Attorneys for plaintiff appellee.*

EXUM, Justice.

This case presents questions involving a contempt order imposed in part under General Statute 1A-1, Rule 37(b), as a sanction for defendant's alleged noncompliance with an earlier order compelling certain discovery. The first is whether the contempt order which imposes no punishment pending the expiration of a period in which defendant may purge itself by complying with a modified version of the earlier order is immediately appealable. We hold that it is. We are then presented with whether the earlier order and the contempt order are in error. To decide this we must consider important questions involving our rules regulating discovery in civil actions, particularly Rules 26 (scope), 33 (interrogatories), and 34 (production of documents)—their interrelationship and their use and abuse.

In this wrongful death action plaintiff alleges that the negligence and gross negligence of Duke Power Company caused the death by electrocution of plaintiff's intestate on October 4, 1973. Death allegedy resulted from the contact of an aluminum ladder, being used by decedent to paint the gable of a house, with defendant's 7200-volt electrical power line. Plaintiff alleges that defendant was negligent in the creation, maintenance, location and condition "of its uninsulated high-tension wires, and the failure and refusal by Duke Power to remedy the condition . . . of which it had full notice and knowledge." Plaintiff further alleges that a similar accident occurred about one year previously causing the death of Nelson Hale, the former owner of the house, "from the same uninsulated wires at the same place, under the same or substantially similar circumstances as those alleged in this complaint." Plaintiff seeks compensatory damages in the sum of $1,250,000 and punitive damages in the sum of $6,250,000.

Defendant's answer denies negligence and asserts the defense of contributory negligence.

Willis v. Power Co.

On July 29, 1974, plaintiff served on defendant a single document entitled "Plaintiff's Interrogatories and Request for Documents to Defendant, Set No. 1," comprising 37 interrogatories most of which contained a number of subdivisions and a request that defendant produce all documents identified in the interrogatories. In summary the pertinent interrogatories asked defendant (1) to identify persons who had investigated the equipment in question, the Nelson Hale accident, and who had been contacted by defendant or given defendant any information relative to the accident in suit; (2) to furnish various kinds of information regarding all claims for electric shock or burns *ever made* against defendant; (3) "identify" each document containing any information "gained by" or "relating to the contacts" made by any of the persons identified and "relating" to any other claims inquired about; (4) identify each document it did not intend to produce and which was not in its possession or control; and (5) "requested" defendant to produce and permit plaintiff to inspect "all documents identified."

On August 10, 1974, defendant filed objections to those interrogatories asking it to "identify" certain documents as well as to other interrogatories not involved in this appeal. Defendant also moved for a protective order on the grounds that to answer the interrogatories and produce the documents requested would cause it unreasonable annoyance, expense and oppression and on the further ground that since no documents had yet been designated it need not respond to plaintiff's request for them and need not respond, in any event, until its objections were ruled on by the court.

Defendant's objections and its motion were apparently calendared for hearing on November 25, 1974. When called for hearing defendant's counsel was not present in court. Judge Falls heard from plaintiff's counsel and entered the following order before the noon recess on November 25, 1974:

"THIS CAUSE . . . being heard on the pleadings and argument of counsel for plaintiff, and appearing to the court that said Motions and Objections should be denied in their entirety;

"NOW, THEREFORE, IT IS ORDERED, AJUDGED AND DECREED THAT defendant's Motion for Protective Order, and Objections to Plaintiff's Interrogatories and Motion be, and same hereby are, denied and that defendant be, and it

hereby is, ordered to answer plaintiff's Interrogatories heretofore filed July 30, 1974, and produce and permit plaintiff to inspect and copy the documents therein designated within ten (10) days from the entry of this order."

That afternoon defendant's attorneys appeared and requested a hearing. A hearing was afforded them on the morning of November 26. The upshot of this hearing was that the November 25 order was allowed to stand without modification. Defendant excepted to the order.

On December 5, 1974, defendant served its answers and produced certain documents. No question was left unanswered by defendant. Interrogatory 1(b), which reads:

"Identify each and every person who has, in the course of his employment with you or, if not an employee, at your request:

(b) conducted any study or investigation or measurement of any of the Relevant Equipment,

(i) on or after October 4, 1973;

(ii) between October 28, 1972 inclusive and October 4, 1973."

(iii) for a period of 2 years prior to October 28, 1972."

was responded to by defendant as follows:

"Olin Brooks, Charles Ray Hardin, John McGee, Wesley Thompson, and L. D. Weeks, Jr., measured the line on the east side of 112 Tranquil Avenue after October 28, 1972, and again after October 4, 1973. The names of any other employees who did any measuring or investigation are not known except members of the Claim Department who did some investigation under the direction of the defendant's attorney."

Plaintiff's Interrogatory No. 12 in summary asked defendant to identify any person who had made any kind of investigation of the Nelson Hale accident. Interrogatory No. 13(c) asked defendant to "Identify each document which relates or refers or contains any information relating to action taken by" any

person identified in Interrogatory No. 12. To Interrogatories 12 and 13 defendant answered:

> "R. P. Bailey and D. M. Alexander conducted an investigation under the direction of the defendant's attorney, W. I. Ward, Jr.; and they performed such investigation immediately after the Hale accident. Olin Brooks, Wesley Thompson, John McGee, and C. R. Hardin took measurements and prepared a report pertaining to the measurements. The actions were taken because of the Nelson Hale accident."

Plaintiff's Interrogatories 16 and 17 asked defendant to identify every person contacted by defendant or who had given any information to defendant relating to the David Willis accident. For each person so identified five different categories of information were requested. Defendant was also requested to "identify each document which relates or refers to or contains information relating to the contact of said person." In answer to these interrogatories the defendant listed the names of some 32 persons and gave with regard to each person the information asked for by the interrogatories. No documents however were identified. Plaintiff's Interrogatory No. 33 in summary asked defendant to give various kinds of information regarding each occurrence in which a person had received an electrical shock or burn from any of defendant's equipment carrying more than 300 volts which resulted in the death or hospitalization of the person and to "identify each document relating to said occurrence." To this interrogatory defendant responded by providing the name, date, location, and a one sentence description of the accident, type of equipment involved, and nature of injuries received for some 55 claims filed against it dating from 1937.

To its answers defendant attached documents as follows: (1) correspondence from William I. Ward (defendant's chief trial counsel) to the North Carolina Utilities Commission relative to the accident in suit; (2) photographs of the scene; (3) certain provisions of the National Electrical Code; (4) a completed accident report form relating to the accident in suit; (5) a measurement reporting form apparently completed by defendant's employees Hardin and Brooks relating to the accident scene; (6) a schematic drawing of the accident scene; (7) correspondence from the Utilities Commission to the plaintiff; (8) a right-of-way agreement; (9) other schematic drawings the import of which is not clear in the record.

Under Section "IV. Request for Documents" plaintiff requested defendant to produce and permit plaintiff to inspect all of the documents identified in Interrogatories 1 through 37. In Interrogatory 37 plaintiff requested defendant to identify each document "designated in Section IV, *infra*," but which defendant did not intend to produce in response to a claim of privilege or other ground for nonproduction or any document which was not in defendant's possession, custody or control. Defendant answered Interrogatory No. 37 by stating that it had designated no documents in "Section IV, *infra*," and further that it did not "intend to produce under CLAIM OF PRIVILEGE all of the documents contained in its claims files, all of which were prepared and/or drafted at the direction of the defendant's attorney for use in the defense of actions against the defendant or were communications between defendant and defendant's attorney." To plaintiff's request for documents defendant answered as follows: "The defendant cannot produce documents which are not specified; however, the defendant claims as privileged all of the documents in its claims files which were prepared by or at its attorney's direction and/or which were communications between the defendant and its attorneys. Those documents which it does not claim as privileged are attached hereto." At the conclusion of the November 26 hearing, defendant's counsel had entered into the record an affidavit, the substance of which is that defendant's claims agents are supervised by defendant's attorneys, that their files are under the attorneys' control and contain their work product.

On December 12, 1974, plaintiff moved the trial court for an order to show cause why defendant should not be held in contempt for failing to comply with the court's November 25, 1974, order. Plaintiff suggested specifically that defendant had failed to answer Interrogatories Nos. 1 (b), 13, 16, 17, 33, and 37. The motion was heard on January 6, 1975, after which the court entered its order on January 9, 1975, from which defendant has appealed. This order, in summary, found that defendant had not produced or permitted plaintiff to inspect defendant's investigations files on the accident in suit or on the Nelson Hale accident, and that defendant had wilfully failed to comply with the November 25, 1974, order in that it had not answered Interrogatory 1 (b) in full and had not produced the documents designated in Interrogatories 13, 16, 17 and 33. The order concluded that defendant's described omissions constituted contempt of

---
**Willis v. Power Co.**

---

the court and tended to defeat and prejudice the rights of the plaintiff. The order further then adjudged defendant to "be in contempt of this court under Rule 37(b) and as for contempt of this court under the laws of North Carolina . . . . " The order provided, however, that defendant could purge itself of contempt if within 30 days it provided the plaintiff with the names of all of its Claims Department members who investigated the Hale and Willis accidents and produced and permitted plaintiff to copy "defendant's entire files on its investigation of the Nelson Hale and David Willis deaths . . . and all other deaths and injuries referred to in Interrogatory 33 which occurred within three years prior to January 1, 1975, provided that defendant shall not be required to produce or submit for plaintiff's inspection any part of a writing which part reflects an attorney's mental impressions, conclusions, opinions, or legal theories, and as to such parts, if any, defendant shall submit them to this court for such determination."

## I

We think the Court of Appeals erred in concluding that this order adjudging the defendant to be in contempt was not appealable. Whether we characterize the contempt proceeding as criminal or civil, or both, it is clear that unless the fact that defendant was permitted to purge itself in lieu of being immediately punished requires a different result, the order adjudging defendant to be "in contempt . . . under Rule 37(b), and as for contempt . . . for failure to comply with the November 25, 1974, order . . . " and characterizing defendant's conduct as tending to "defeat, impair, impede, and prejudice the rights of plaintiff . . . " was immediately appealable. Insofar as the contempt order was based upon defendant's wilful disobedience of a prior lawful order of the trial court it was appealable under General Statutes 5-1(4) and 5-2. Insofar as the contempt order was based upon defendant's defeating, impairing, impeding or prejudicing the rights of the plaintiff, see G.S. 5-8, it was appealable under the rule announced in *Luther v. Luther*, 234 N.C. 429, 67 S.E. 2d 345 (1951) and cases cited therein. *See generally, Rose's Stores v. Tarrytown Center*, 270 N.C. 206, 154 S.E. 2d 313 (1967) ; *Galyon v. Stutts*, 241 N.C. 120, 84 S.E. 2d 822 (1954) ; Snepp, The Law of Contempt in North Carolina, 7 Wake Forest L. Rev. 1 (1970).

The Court of Appeals, however, determined that since defendant was not punished but was permitted to purge itself

of the contempt in lieu of being punished, the contempt order was not appealable. It relied on our language in *Luther v. Luther, supra* at 432, 67 S.E. 2d at 347, that "no legal impediment bars a person, who is penalized as for contempt, from obtaining a review of the judgment entered against him in the Superior Court by a direct appeal to the Supreme Court." We made a similar statement in *Rose's Stores v. Tarrytown Center, supra* at 214, 154 S.E. 2d at 318, that "a person who is penalized *as for contempt* may obtain a review of the judgment entered against him by a direct appeal to the Supreme Court." The Court of Appeals also relied on secondary authorities including an annotation, "Contempt Adjudication — Appealability," 33 A.L.R. 3d 448, 564 (1970) ; and it relied on *Alexander v. United States,* 201 U.S. 117, 121 (1960).

The language in *Luther* and *Rose's Stores* was, first of all, directed only toward proceedings as for contempt, i.e., civil proceedings under General Statute 5-8. The language had no application to a criminal contempt proceeding bottomed on the contemnor's violation of General Statute 5-1 (4), i.e., the "wilful disobedience of any process or order lawfully issued by the court." Insofar as the contempt order here is bottomed upon a violation of this statute, its appealability is governed by General Statute 5-2 which provides, "Any person *adjudged* guilty of contempt under the preceding section [§ 5-1] has the right to appeal to the Appellate Division in the same manner as is provided for appeals in criminal actions, except for the contempts described and defined in subdivisions (1), (2), (3), and (6). Nor shall the right of appeal lie under subdivisions (4) and (5) if such contempt is committed in the presence of the Court." (Emphasis added.) This statute thus provides for an appeal upon a contemnor's being *adjudged* guilty of contempt notwithstanding the lack of imposition of punishment. The language relied on by plaintiff in *Luther* and *Rose's Stores* was, moreover, not used in the sense that punishment was a prerequisite for appealability of an "as for contempt" order although in those cases the contemnor had in fact been punished.

*Alexander v. United States, supra,* relied on by the Court of Appeals, is clearly distinguishable on its facts. That case involved naked discovery orders directing the appellants to appear before a special examiner to answer certain questions and to produce certain documents. There had been no initiation at the time of the appeal of contempt proceedings.

Rule 37, furthermore, establishes certain sanctions for failure of a party to comply with discovery processes. Subsection (b) (2)d of this rule provides that a court may treat "as *a contempt* of court the failure to obey any orders [to provide or permit discovery] except an order to submit to a physical or mental examination . . . . " (Emphasis added.) The A.L.R. annotation relied on by the Court of Appeals was preceded by the case of *Southern Railway Co. v. Lanham,* 403 F. 2d 119, 33 A.L.R. 3d 427 (5th Cir. 1968). In that case the appealing party had been found by the trial court to be in "civil contempt" and fined unconditionally $2,000 for failure to comply with an order to produce documents during discovery proceedings. The Fifth Circuit, finding the contempt criminal in nature notwithstanding the recitation of the trial judge held that the order was immediately appealable. It said, 403 F. 2d at 125, 33 A.L.R. 3d at 436:

> "Appeal from an adjudication of criminal contempt is a recognized means of obtaining immediate review to test discovery orders. See *Garland v. Torre,* 2d Cir., 259 F. 2d 545, cert. denied, 1958, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed. 2d 231; *Hickman v. Taylor,* 3d Cir. 1945, 153 F. 2d 212, aff'd, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; Developments in the Law—Discovery, 74 Harv. L. Rev. 940, 996 (1961). 'Appellate review of the final judgment of contempt involves power to review the civil element as well as the criminal and to grant relief affecting both.' *Hickman v. Taylor, supra,* 153 F. 2d at 214, n. 1. If the order of production was improper, the contemnor's refusal to comply was justified and the contempt conviction must be reversed. Thus the dispute on appeal is between the private parties to the original suit. The character of the contempt as civil or criminal, however, is fixed by the nature and purpose of the punishment and is not affected by the nature of the parties to the appeal. Cf. *McCrone v. United States, supra,* 307 U.S. at 64, 59 S.Ct. at 686, 83 L.Ed. 1108.

> \* \* \*

> "Finally, a citation for criminal contempt pursuant to a refusal to obey an order of production is within the authority conferred on the district courts by Rule 37 of the Federal Rules of Civil Procedure. *Hickman v. Taylor,* 3d Cir. 1945, 153 F. 2d 212, 214, n. 1, aff'd, 1947, 329 U.S. 495, 67 S.Ct. 385. Rule 37(b) (2) authorizes the district

court to impose such sanctions as are 'just' when any party 'refuses to obey : . . an order made under Rule 34 to produce any document . . . . ' Accordingly, since the conviction for criminal contempt was final and appealable, and since appellant has filed a timely notice of appeal, we proceed to the merits of this controversy."

Not to entertain this appeal would force defendant either (1) to risk being punished by fine or imprisonment or (2) to comply with an order which it contends and which we believe to be erroneously entered. Should defendant comply with the purging conditions to avoid punishment, the important legal questions it seeks to raise on this appeal and tried to raise in the trial court would be rendered moot. Under these circumstances the contempt order "affects a substantial right" and is appealable under General Statutes 1-277 and 7A-27(d)(1).

[1] We hold, then, that when a civil litigant is adjudged to be in contempt for failing to comply with an earlier discovery order, the contempt proceeding is both civil and criminal in nature and the order is immediately appealable for the purpose of testing the validity both of the original discovery order and the contempt order itself where, as here, the contemnor can purge himself of the adjudication of contempt only by, in effect, complying with the discovery order of which he essentially complains. It has long been recognized that one act may be punishable both "as for contempt," i.e., as civil contempt, and "for contempt," i.e., criminal contempt. *Rose's Stores v. Tarrytown Center, supra; Galyon v. Stutts, supra.* This kind of duality particularly inheres in a party litigant's wilful failure to comply with a discovery order. Punishment is not, therefore, limited to the criminal sanctions provided by General Statute 5-4.

II

We now proceed to examine the lawfulness of the contempt order and the November 25, 1974, order upon which it is based.

The heart of this dispute is whether and to what extent plaintiff should be permitted to inspect defendant's claims files not only on the accident in question but on all other accidents involving electrical shocks or burns. Plaintiff wants *all* of the information contained in *all* of these files for the life of the company and defendant apparently refuses to give up any of it which is documentary in form. The lawsuit is stymied until this threshold discovery issue can be properly settled.

First we note that, substantively, the question at issue is not easily solved even when all of the facts relating to it have been properly developed. In *Southern Railway Co. v. Lanham, supra,* plaintiff sought to discover certain documents in defendant's claims files. The Fifth Circuit in a thoughtful opinion held that while some of these documents might be discoverable, certainly not all of them were and on grounds other than attorney-client privilege or attorney work product. The Fifth Circuit held:

> "(1) That the statements of the train crew [made to defendant's claims agents] were properly discoverable; (2) that while the factual elements of the accident investigation reports were discoverable, those portions of the reports reflecting the opinions and evaluations of appellant's [claims] agents were not discoverable; and (3) that the trial court must clarify the order as it relates to the attorney-client correspondence, deleting privileged communications, if any, encompassed by the order to produce."

We, of course, cannot now address the question of what might or might not be discoverable from defendant's claims files. Neither could the trial court have properly done so until the items contained therein were more specifically delineated and placed in bolder relief than they have been so far. Failure to do this lies at the core of these litigants' misuse of the discovery processes which, in turn, undoubtedly led the able trial judge into legal error.

[2, 3] The November 25, 1974, order requires the defendant to answer the plaintiff's interrogatories and to produce "the documents therein designated . . . . " The question is which documents and where designated. At the time of this order no documents had been identified or designated by either party. Rule 34 requires that as a prerequisite of production, documents must be (1) "designated," (2) "within the scope" of Rule 26(b), and (3) in the "possession, custody, or control" of a party from whom they are sought. The party seeking production must show that these prerequisites are satisfied. A proper function of interrogatories is to obtain the information necessary to make such a showing. Plaintiff's interrogatories properly, therefore, asked the defendant to "identify" certain documents. It was error, however, for the trial court to order production of any documents before the documents had been

(1) further "identified" by defendant, or (2) further "designated" by plaintiff. Whether and to what extent defendant should have been required to identify documents in answer to plaintiff's interrogatories was a threshold question pending before the court on November 25, 1974, but which the court never addressed.

**[4]** The order for production, moreover, was in error since it was not based upon either a showing or finding of good cause. Under Rule 34 as then in effect, orders for production of documents could be obtained, if not by mutual consent of the parties, only by a motion demonstrating and a finding of good cause. Under older North Carolina discovery rules, production and inspection of documents required a court order supported by affidavits showing the necessity for inspection and materiality of the documents sought. If the affidavit was insufficient, an order based upon it was invalid. *Vaughan v. Broadfoot*, 267 N.C. 691, 149 S.E. 2d 37 (1966). While the adoption of Rule 34 formally dispensed with the requirement of an affidavit, the practice of utilizing an affidavit continued in the federal courts unless it was manifestly clear that verification of the good cause could be otherwise supplied, 4A J. Moore, Federal Practice, ¶ 34.07 at 34-47 n. 5 (2d ed. 1975), and in our own state courts. *Stanback v. Stanback*, 287 N.C. 448, 215 S.E. 2d 30 (1975). In any case the good cause requirement of Rule 34, before it was amended, was an essential and material requirement and "not a mere formality which may be overlooked." *Stanback v. Stanback, supra* at 459, 215 S.E. 2d at 38.

It is difficult to know how good cause could have been shown by the plaintiff in this case until the documents sought were somehow identified and more adequately described.

**[5]** Turning now to the contempt order itself, it is clear that defendant has been found in contempt "for failure to produce all of the documents in its claims files on the accident in issue, the Hale accident, and all other 'incidents of injury or death from electric shock or burn' and for failure to answer Interrogatory 1(b) 'in full' and 'to produce the documents designated in Interrogatories 13, 16, 17 and 33.' " Insofar as the contempt order addresses the defendant's failure to produce documents, it is based upon an unlawful order for production and is therefore erroneous. With regard to defendant's failure to answer Interrogatory 1(b) the record demonstrates a good faith effort

on the part of defendant to answer this interrogatory. The interrogatory, as defendant contends, seems to require identification of those who made *engineering* investigations as opposed to investigations of the accidents generally. Information concerning investigations of the accidents generally rather than the equipment itself is arguably not requested. The interrogatory is ambiguous in this regard. Moreover, defendant's good faith is amply demonstrated by the inclusion of the names of its claims agents in its answers to Interrogatories 12 through 17. Therefore the contempt order, insofar as it addresses the failure of the defendant to answer Interrogatory 1(b), is in error because there is no competent evidence in the record to support a finding that defendant wilfully refused to answer this interrogatory. *See Galyon v. Stutts, supra.*

[6, 7]  Plaintiff has sought too much; defendant would give up too little. Certainly information in all of defendant's claims files relating to shocks or burns wherever and whenever they may have occurred would be neither relevant nor likely to lead to relevant information and would fall outside the scope of Rule 26(b)(1). The trial court obviously recognized this in the purging provisions of its contempt order where, *for the first time,* it limited the discoverable material to the files on Hale, the accident in suit, and other similar accidents occurring *within three years.* This limitation should have been addressed early on in the proceeding by the parties and, if necessary, the court. Defendant on the other hand should have identified some of the documents requested by plaintiff. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter not privileged which is relevant to the subject matter involved in the pending action . . . including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence . . . . " Thus defendant should have identified those documents which met the relevancy requirements of Rule 26(b)(1) even if the documents themselves may not be discoverable because they are privileged or fall within the trial preparation immunity of Rule 26(b)(3). Obviously the question of the discoverability of the documents cannot be properly determined until they have been appropriately identified and designated.

### III

**[8, 9]** On remand the parties and, if necessary, the trial court, should be aware of substantial changes in the rules regarding discovery, effective January 1, 1976, and applicable to pending litigation. Again we note that it will probably be appropriate for the discovery to be limited in terms of time and perhaps other factors to conform to the relevancy requirements of Rule 26(b)(1). Although the rule should be construed liberally neither party should be allowed to roam at will in the closets of the other. The test of relevancy under Rule 26 is not, of course, the stringent test required at trial. The rule is designed to allow discovery of any information *"reasonably calculated* to lead to the discovery of admissible evidence . . . . " While the relevancy requirements of Rule 26 are mandatory, a discretionary protective order may be granted under Rule 26(c) even as to relevant material. One party's need for information must be balanced against the likelihood of an undue burden imposed upon the other. Emphasis in the new rules is not on gamesmanship, but on expeditious handling of factual information before trial so that the critical issues may be presented at trial unencumbered by unnecessary or specious issues and so that evidence at trial may flow smoothly and objections and other interruptions be minimized.

**[10, 11]** The new procedure for obtaining production and inspection of documents has eliminated the requirement of a court order based upon motion and good cause. New Rule 34 simply requires serving the request for production upon the other party. Protections are afforded by the designation, scope, and possession requirements of Rule 34, the exemption of privileged matter in the scope provision of Rule 26, the allowance of protective orders, and the extended "work product," or trial preparation, immunity of Rule 26(b)(3). "Designation" does not necessarily mean that documents must be separately described. Designation by categories may be sufficient depending upon the categories utilized. *See Kirkpatrick v. Industrial Commission,* 10 Ariz. App. 564, 460 P. 2d 670 (1969). "Claims files" is, of course, not a permissible category.

**[12]** The new rules contemplate that "in most instances, details of production and inspection can be worked out among the lawyers without recourse to the court." 4A J. Moore, Federal Practice ¶ 34.05[3] at 34-37 (2d ed. 1975). The provision

in Rule 37(d) for a mandatory allowance of expenses against a party which fails to respond to a discovery request, unless other sanctions are imposed under Rule 37 or unless the failure "was substantially justified or . . . other circumstances make an award of expenses unjust," is designed to discourage dilatory practices and frivolous refusals to comply with discovery procedures. Rule 37(d) does not, however, come into operation if the responding party meets the requirements of Rule 33 as to interrogatories and those of Rule 34 as to requests for production. Thus, if a party files answers *or* objections to interrogatories, or serves a written response to a request for inspection, no sanctions under Rule 37(d) may be obtained and the proper procedure for the party seeking discovery is to obtain an order compelling discovery under Rule 37(a).

[13]    The trial court should take care in its supervision of further discovery to protect fully defendant's attorney-client privilege. This protection is absolute under Rule 26, and the privilege under that rule is identical in scope to the traditional privilege. Wright and Miller, Federal Practice and Procedure: Civil § 2017 at 132-33 (1970).

[14-16]    Finally, it should be recognized that the "work product," or trial preparation, exception of new Rule 26(b)(3) goes considerably beyond the protection accorded under the old rule and under *Hickman v. Taylor,* 329 U.S. 495 (1947). Although not a *privilege,* the exception is a "qualified immunity" and extends to all materials prepared "in anticipation of litigation or for trial by or for another party or by or for that other party's consultant, surety, indemnitor, insurer, *or agent.*" (Emphasis added.) The protection is allowed not only materials prepared after the other party has secured an attorney, but those prepared under circumstances in which a reasonable person might anticipate a possibility of litigation. Materials prepared in the ordinary course of business are not protected, nor does the protection extend to *facts* known by any party. Wright and Miller, Federal Practice and Procedure: Civil § 2024 at 197 (1970). Although some cases have held that the trial preparation immunity should not extend to materials prepared for litigation terminated prior to the pending case if the earlier litigation was between different parties, *see, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 207 F. Supp. 407 (M.D. Pa. 1962); *Tobacco & Allied Stocks, Inc. v. Transamerica Corp.,* 16 F.R.D. 534 (D. Del. 1954), we believe

the better rule is that any materials prepared in anticipation for any litigation by the party from whom discovery is sought are protected under Rule 26(b) (3). *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F. 2d 480 (4th Cir. 1973). The latter rule seems most compatible with the rationale of *Hickman v. Taylor, supra,* and with the spirit of the discovery rules. "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor, supra,* 329 U.S. at 516.

[17] Thus a large portion of the materials in defendant's claims files may be subject to the trial preparation immunity. The record is insufficient for us to determine the extent to which this may be the case. However, even such material is not irrevocably barred from plaintiff's sight. Upon a showing of "substantial need" and "undue hardship" involved in obtaining the substantial equivalent otherwise, plaintiff may be allowed discovery. In the interests of justice, the trial judge may require *in camera* inspection and may allow discovery of only parts of some documents. Of course no discovery whatsoever of the "mental impressions, conclusions, opinions, or legal theories of an attorney *or other representative* of a party" concerning the litigation at bar, nor any discovery whatsoever of the work product of attorneys in the case at bar is permitted under the new rule. Rule 26(b) (3).

The decision of the Court of Appeals dismissing defendant's appeal is, therefore, reversed. The orders of the Mecklenburg Superior Court dated November 25, 1974, and January 9, 1975, are likewise reversed. The case is remanded to the Court of Appeals for further remand to the Superior Court of Mecklenburg County for further proceedings not inconsistent with this opinion.

Reversed and remanded.