Justice HUDSON
dissenting.
Because I am concerned that in its opinion the majority has abandoned the principle that confidentiality is the basis for attorney-client *346 privilege, I respectfully dissent. While the majority’s extensive analysis of the history and purpose of the attorney-client privilege and Article 17 is interesting, it fails to address the fundamental premise that the attorney-client privilege applies only to confidential communications. In N.C.G.S. § 120-133, the General Assembly has explicitly stripped confidentiality from redistricting communications upon enactment of the redistricting law. For many years, our law has established that without confidentiality, no attorney-client privilege can apply.
It is well established that the attorney-client privilege “protects confidential communications made by a client to his attorney.” State v. Fair, 354 N.C. 131, 168, 557 S.E.2d 500, 525 (2001) (emphasis added) (citation omitted), cert. denied, 535 U.S. 1114, 122 S. Ct. 2332 (2002). Importantly, “the attorney-client privilege covers only confidential communications.” State v. Brown, 327 N.C. 1, 20, 394 S.E.2d 434, 446 (1990) (emphasis added) (citation omitted). Even communications between attorney and client made in public or in front of others can lose their confidential nature and thus the protection of the privilege. See State v. Van Landingham, 283 N.C. 589, 602, 197 S.E.2d 539, 547 (1973). Confidentiality is aprerequisite to application of the attorney-client privilege — information that is not confidential simply is not subject to the privilege.
Defendants seek to protect much of their legislative redistricting work from public scrutiny under the cloak of attorney-client privilege; however, the relevant statutory language could not be clearer in indicating that the privilege is inapplicable here, making waiver irrelevant. The pertinent language of the statute reads: “Notwithstanding any other provision of law, all drafting and information requests to legislative employees and documents prepared by legislative employees for legislators concerning redistricting . . . are no longer confidential and become public records upon the act establishing the relevant district plan becoming law.” N.C.G.S. § 120-133 (2011) (emphasis added).
There is nothing unclear or ambiguous about the statutory phrase “are no longer confidential.” This Court has long held that “when the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.” Lanvale Props., LLC v. Cnty. of Cabarrus, 366 N.C. 142, 731 S.E.2d 800, 809-10 (2012) (citations and quotation marks omitted). The unequivocal statutory language here can be summed up quite simply: as of 7 November 2011, the dates that this *347 redistricting plan finally became law, all prior “drafting and information requests” and “documents” concerning redistricting ceased to be confidential. Therefore, these requests and documents cannot be covered by the attorney-client privilege, which applies only to confidential communications. This case does not concern a broad waiver of various privileges — the nonconfidential communications in question are simply beyond the protection of the attorney-client privilege, even if they once were protected.
The majority spends its entire opinion in a confusing and unnecessary attempt to prove a negative — that the phrase “attorney-client privilege” does not appear in the text of the statute and therefore, the privilege cannot be considered waived or abrogated thereby. Meanwhile, the majority never addresses, let alone explains, how communications that are “no longer confidential” (a phrase that actually is in the statutory text) can be covered by a common law privilege that has never applied to nonconfidential communications. The only way to reach this conclusion is by suggesting that the word “confidential” in the statute means something other than “confidential.” And as the majority points out, we presume that the legislature “carefully chose each word used,” N.C. Dep’t of Corr. v. N.C. Med. Bd., 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009), and “that the Legislature acted with full knowledge of prior and existing law,” Ridge Cmty. Investors, Inc. v. Berry, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977). Therefore, we must presume that the General Assembly deliberately used the words “are no longer confidential” with full knowledge that a requisite element of the common law attorney-client privilege is that the communications are, and remain, confidential.[4]
Even the authorities cited by the majority repeatedly and explicitly refer to confidentiality as the basis for this privilege. See Swidler & Berlin v. United States, 524 U.S. 399, 403, 118 S. Ct. 2081, 2084 (1998) (noting that “[t]he attorney-client privilege is one of the oldest recognized privileges for confidential communications”); In re Miller, 357 N.C. 316, 328, 584 S.E.2d 772, 782 (2003) (stating that “this protection for confidential communications is one of the oldest and most revered in law”); N.C.G.S. §§ 120-129 to -139 (2011) (titled “Confidentiality of Legislative Communications”); N.C.G.S. § 132-1.1(a) *348 (2011) (exempting certain “Confidential Communications” from the definition of “public records” for three years).
In this opinion the majority has either repudiated the longstanding rule that only confidential communications are entitled to the protection of the attorney-client privilege, which is inconsistent with all prior authority; or, it has rewritten N.C.G.S. § 120-133 to say, instead of “are no longer confidential,” that redistricting communications “continue to be confidential,” which is inconsistent with our role as a reviewing court rather than a legislative body. As a result, the majority has unnecessarily muddled the law in this area to reach its result, and made any future cases in this area of law unpredictable.
Because I conclude that the attorney-client privilege does not apply here, I find it necessary to briefly analyze what the statute renders nonconfidential — “drafting and information requests” and “documents” “concerning redistricting.” N.C.G.S. § 120-133. While the statute does not define “drafting and information requests,” it does provide a very specific and quite broad definition of “documents.” For the purposes of this statute, “document” means “all records, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material regardless of physical form or characteristics.” Id,.' § 120-129(1) (2011). While the statute does not explicitly use the term “e-mail,” I conclude that this statutory definition that includes “letters . . . regardless of physical form or characteristics” necessarily includes electronic mail, which is what plaintiffs seek to discover here. Moreover, the statute expressly applies to outside counsel for members of the General Assembly. The definition of “[legislative employee” expressly includes “counsel to members and committees of either house of the General Assembly . . . who are paid by State funds.” Id. § 120-129(2) (2011).
In sum, the plain and unambiguous terms of the statute provide that all documents (including e-mails) concerning redistricting, even those between legislators and outside counsel, ceased to be confidential upon final enactment of the law on 7 November 2011. Because N.C.G.S. § 120-133 renders these communications “no longer confidential” upon enactment of the districts (and because this litigation commenced after enactment of the law), the attorney-client privilege cannot apply.
While the majority offers no analysis of the work-product doctrine, I see no reason to believe that N.C.G.S. § 120-133 has any effect *349 on the application of that doctrine here because work-product doctrine is not premised upon the confidentiality of communications. Work-product doctrine is “designed to protect the mental processes of the attorney,” specifically his “impressions, opinions, and conclusions or his legal theories and strategies.” State v. Hardy, 293 N.C. 105, 126, 235 S.E.2d 828, 841 (1977). This Court has stated that work-product doctrine is “not a privilege,” but rather a “qualified immunity” that “extends to all materials prepared in anticipation of litigation or for trial.” Willis v. Duke Power Co., 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976) (citation, emphasis, and quotation marks omitted).[5] It is important not to overstate this protection, however, as the phrase “prepared in anticipation of litigation” does not mean “prepared while anticipating litigation.” The fact that redistricting litigation is virtually inevitable every ten years does not cloak every redistricting document with work-product protection. While work-product protection is broad for those materials prepared for litigation, it does not extend to any and all materials prepared in a situation in which litigation is likely. As the Fourth Circuit has stated, only those materials prepared specifically “because of' litigation are protected, not those that are created “with the general possibility of litigation in mind.” Nat’l Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992).
In addition, “[m] ateríais prepared in the ordinary course of business are not protected.” Willis, 291 N.C. at 35, 229 S.E.2d at 201 (citation omitted); See Nat’l Union Fire Ins., 967 F.2d at 984. Maps, tables, plans, and other materials and discussions related to the actual writing of the redistricting legislation are obviously prepared in the ordinary course of business of the legislature. Even an analysis of the constitutional framework for redistricting would seem to me to be within the ordinary course of a legislature’s fulfilling its constitutional responsibility to rewrite the districting legislation. Thus, any documents that relate to the substance of the redistricting legislation (decisions on where to draw district lines, analysis of census data, etc.) should not be covered by work-product protection. Communications regarding strategic preparation for preclearance litigation, for example, might well be covered, and the trial court can address such matters as document production moves forward.
*350 Finally, the work-product doctrine gives only a “qualified immunity,” not an absolute shield. Willis, 291 N.C. at 35, 229 S.E.2d at 201. “Upon a showing of ‘substantial need’ and ‘undue hardship’ involved in obtaining the substantial equivalent otherwise, plaintiff may be allowed discovery.” Id. at 36, 229 S.E.2d at 201. Because the materials necessary to show whether the legislature violated the basic rules of redistricting as set forth by the U.S. Supreme Court may well lie among those documents now claimed as privileged, plaintiffs may have a reasonable claim to an exception to work-product protection. This determination should be left to the trial court. Here, as in Willis, “a large portion of the materials in defendant’s . . . files may be subject to the trial preparation immunity. The record is insufficient for us to determine the extent to which this may be the case.” Id.
In its order here, the trial court ruled that N.C.G.S. § 120-133 requires defendants to produce certain material pertaining to the redistricting process without regard to attorney-client privilege, legislative privilege, or work-product doctrine. The order states that “because the record before the Court at this time does not permit the Court to rule with any specificity which documents might be excluded from the scope of § 120-133 . . . the Court can only suggest that the parties consider and agree among themselves a reasonable means of identifying categories of documents that ought to remain confidential.” In my opinion, the trial court erred in leaving responsibility for these determinations entirely in the hands of the parties; the trial court should conduct an in camera review and resolve any issues on which the parties cannot agree. See In re Miller, 357 N.C. at 336, 584 S.E.2d at 787 (stating that “the responsibility of determining whether the attorney-client privilege applies belongs to the trial court”). To the extent there is any argument about whether a particular communication meets the statutory definition of “document” or whether it is “concerning redistricting,” the only appropriate remedy consistent with the rules of Civil Procedure and prior case law is an in camera review by the trial court. “If . . . there is disagreement about whether the order covers certain questionable documents or communications, the superior court must conduct an in camera review to determine the extent of the order as to those documents or communications.” State v. Buckner, 351 N.C. 401, 411-12, 527 S.E.2d 307, 314 (2000). Here, it is the trial court’s responsibility to determine whether disputed materials are “documents” within the meaning of *351 the statute, whether they are “concerning redistricting,”[6] and whether work-product doctrine protects such documents (or portions thereof) nonetheless. I would so hold and remand for the trial court to proceed accordingly.
In conclusion, the majority has analyzed at length an issue that is not really presented here while failing to address the substantial issues presented on appeal. I would hold that documents listed in N.C.G.S. § 120-133 are not subject to attorney-client privilege because, following enactment of the redistricting legislation on 7 November 2011, those documents are not confidential. I would reverse the trial court’s order insofar as it found a broad waiver of privilege and remand for in camera review of any and all disputed documents. Those that relate to the legislative process of redistricting and were confidential before enactment should be open to discovery. Should defendants assert work-product protection of any material, any such claims should also be subject to in camera review and a ruling by the trial court.
For the reasons stated here, I respectfully dissent.

. If, as the majority suggests, section 120-133 was written as a “narrow exception” solely intended to “ensure compliance with the requirements of the Voting Rights Act,” surely the General Assembly could and would have said so. Courts “are without power to interpolate, or superimpose, provisions and limitations not contained [in the statute].” State v. Davis, 364 N.C. 297, 302, 698 S.E.2d 65, 68 (2010) (citations omitted).

. Other cases have referred to the doctrine as a “qualified privilege” while retaining the parameters of the protection described in Willis. E.g. Hardy, 293 N.C. at 126, 235 S.E.2d at 840.

. Obviously, any materials that are not “documents” or are not “concerning redistricting” would still be eligible for attorney-client privilege if they meet the common law requirements of that privilege.