Next Advisor Continued, Inc. v. LendingTree, Inc., 2016 NCBC 70.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

NEXT ADVISOR CONTINUED, INC.,

        Plaintiff,

v.

LENDINGTREE, INC. and LENDINGTREE, LLC,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 20775

ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
PROTECTIVE ORDER

1. **THIS MATTER** is before the Court upon Defendants LendingTree, Inc. and LendingTree, LLC's (collectively, "LendingTree" or "Defendants") Motion for Protective Order (the "Motion") in the above-captioned case. The Motion seeks to prohibit Plaintiff Next Advisor Continued, Inc. ("Next Advisor" or "Plaintiff") from deposing LendingTree's Chief Executive Officer ("CEO"), Doug Lebda ("Mr. Lebda"), under the "apex doctrine" and the provisions of Rule 26 of the North Carolina Rules of Civil Procedure. For the reasons set forth herein, the Court **DENIES** the Motion.

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Christopher G. Smith, Susan H. Hargrove, and Isaac Linnartz, for Plaintiff Next Advisor Continued, Inc.*

> *Moore & Van Allen PLLC, by Scott M. Tyler, Russell F. Sizemore, M. Cabell Clay, and Glenn E. Ketner, III, for Defendants LendingTree, Inc. and LendingTree, LLC.*

Bledsoe, Judge.

# I.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

2.     Next Advisor alleges that "it is a leader in the innovative business of the internet content marketing of credit cards." (Compl. ¶ 7.)

3.     According to Next Advisor, the business of internet content marketing of credit cards "involves writing articles targeted to potential credit card applicants." (Compl. ¶ 7.) If the viewer clicks on a credit card ad on a website and then clicks the link to apply for a credit card, "the issuer of the credit card compensates Next Advisor." (Compl. ¶ 7.) Next Advisor alleges that the "financial and operational details of its business are highly confidential." (Compl. ¶ 8.)

4.     Next Advisor contends that, in late 2014 and the first-half of 2015, LendingTree, which "operates a mortgage comparison website," was "endeavor[ing] to expand its business to include lending products other than mortgages" and "entered into discussions about the possibility of LendingTree acquiring Next Advisor." (Compl. ¶¶ 9–12.) During these acquisition negotiations, Next Advisor asserts that LendingTree and Next Advisor entered into a non-disclosure agreement, which permitted LendingTree "to use Next Advisor's confidential information solely for the purpose of evaluating the transaction." (Compl. ¶¶ 13–14.) After Next Advisor and LendingTree entered into a non-binding indication of interest for the purchase of Next Advisor by LendingTree, Next Advisor contends that it provided a broad range of confidential information and trade secret documents regarding its business to LendingTree. (Compl. ¶¶ 13–15.)

5.     Next Advisor alleges that "[a]fter acquiring Next Advisor's confidential information, and Trade Secret Information, LendingTree began to develop new content and promote that content heavily on [the channels that Next Advisor confidentially had disclosed as [its] most productive revenue channels]" and "revolutionized its entire credit card marketing strategy." (Compl. ¶ 23.)  Next Advisor alleges that it objected to what it considered "LendingTree's blatant use of Next Advisor's confidential and Trade Secret Information," but instead of denying the use, Next Advisor contends that LendingTree "suggested that the problem would be solved if the parties could finalize the transaction." (Compl. ¶ 24.)

6.     Next Advisor alleges that LendingTree then made an offer to purchase Next Advisor that Next Advisor believed was below the company's fair market value. (Compl. ¶ 25.)  When Next Advisor's CEO expressed dismay at the low offer price, Next Advisor alleges that LendingTree's CEO, Mr. Lebda, forecast in an email that if Next Advisor did not accept the offered price or a little more, "the alternative path is that . . . we put a bunch of people on this and we bash each other in the market . . . But we've got a brand. His margins shrink and we still win." (Compl. ¶ 26.)  Next Advisor rejected LendingTree's offer and the acquisition negotiations ended soon thereafter. (Compl. ¶ 27.)

7.     Next Advisor alleges that LendingTree then quickly built "an entire business that was immediately successful using the information that it unlawfully and brazenly misappropriated from Next Advisor."  (Compl. ¶ 1.)

8.    On November 6, 2015, Next Advisor filed its Complaint initiating this action, alleging claims for breach of contract, misappropriation of trade secrets, and unfair and deceptive trade practices against LendingTree. (Compl. ¶¶ 30–39.) The gravamen of Next Advisor's Complaint is that "LendingTree, over the explicit objection of Next Advisor, willfully and wrongfully continued to use the confidential and trade secret information misappropriated from Next Advisor to build its own Next Advisor-like business," and that "[h]aving stolen and copied Next Advisor's methods and relied upon highly confidential financial data belonging to Next Advisor, LendingTree's credit card marketing business enjoyed a dramatic spike in revenue almost instantly, which trajectory continues, to the detriment of Next Advisor." (Compl. ¶ 2.)

9.    Plaintiff later moved for a preliminary injunction on April 11, 2016, and after an evidentiary hearing on June 21, 2016, the Court entered an Order Granting Plaintiff's Motion for Preliminary Injunction on July 6, 2016.

10.    The issue for decision on Defendant's Motion involves Plaintiff's request to take the deposition of LendingTree's CEO, Mr. Lebda.  Next Advisor initially served a notice on February 11, 2016 to take Mr. Lebda's deposition on March 16, 2016. Defendants opposed Plaintiff's request, and Plaintiff elected to pursue other discovery before later serving an amended notice on June 22, 2016 to take Mr. Lebda's deposition on July 12, 2016. (Defs.' Mot. Protective Order ¶ 3; Pl.'s Memo. Opp. Defs.' Mot. Protective Order 2.)  LendingTree filed the current Motion for Protective Order on July 8, 2016, and, as a result, Mr. Lebda's deposition did not go forward as noticed.

Next Advisor subsequently deposed LendingTree's corporate designees under N.C. R. Civ. P. 30(b)(6).

11. Briefing on Defendants' Motion for Protective Order was completed on August 15, 2016, and the Court held a telephone hearing on the Motion on August 24, 2016. At the conclusion of the telephone hearing, the Court denied Defendants' Motion and indicated that the Court would subsequently enter a written order memorializing the Court's ruling.

II.

ANALYSIS

12. Under the North Carolina Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" unless otherwise limited by order of the Court. N.C. R. Civ. P. 26(b)(1). "It is not ground for objection that the information sought will be inadmissible at trial if the information appears reasonably calculated to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought." *Id.* "It is equally clear under the Rules that North Carolina judges have the power to limit or condition discovery under certain circumstances." *DSM Dyneema, LLC v. Thagard*, 2014 NCBC LEXIS 51, at *13 (N.C. Super. Ct. Oct. 17, 2014) (citations and quotation marks omitted).

13. The "apex doctrine" reflects the specific exercise of a trial court's discretion to limit discovery sought from corporate executives. *See In Re Tylenol*

*(Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 14-MC-00072, 2014 U.S. Dist. LEXIS 89881, at *8 (E.D. Pa. July 1, 2014) ("Simply stated, the apex doctrine applies when those at the top of the company, i.e., men and women at the 'apex,' really don't have personal knowledge about what is going on with the product, or its marketing, or its financing or really anything else that might be of interest to the plaintiffs, or the attorneys, or the jury, or the court."); *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("This judicially-created vehicle appropriately seeks to limit the potential for the discovery rules to serve as a tool for harassment."); *see also Gay v. Peoples Bank*, 2014 NCBC LEXIS 46, at *9 n.4 (N.C. Super. Ct. Sept. 17, 2014) (discussing doctrine).

14. This largely federal doctrine has been described by one federal court in North Carolina as follows:

> The "apex doctrine," rooted in Federal Rule of Civil Procedure 26, was developed as an aid in ensuring that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs. In its stronger form, the doctrine holds that, before a plaintiff may depose a defendant corporation's high-ranking ("apex") officer, that plaintiff must show that "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Wal-Mart Stores, Inc. v. Vidalakis*, No. 5:07-39, 2007 U.S. Dist. LEXIS 95696, 2007 WL 4591569, at *1 (W.D. Ark. Dec. 28, 2007) (citation omitted). While the Fourth Circuit has never discussed the apex doctrine, Wright and Miller address its underlying considerations:
>
>> A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge. Protective orders are sometimes granted on such grounds where there appears a clear risk of abuse because the proposed deponent is a busy

> government official, or a very high corporate officer unlikely to have personal familiarity with the facts of the case.

> 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2037 (3d ed. 2012) (footnotes omitted). The Court, attuned to the potential for abuse in the deposition of high-level corporate employees, will intervene where a requested deposition represents "an in terrorem increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence . . . ." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975); *see also Folwell v. Hernandez*, 210 F.R.D. 169, 173-75 (M.D.N.C. 2002) (permitting but a limited oral deposition of a defendant's CEO and President on those topics within the scope of the executive's unique, personal knowledge).

> Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates [Federal] Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes "good cause" for such an order as an "annoyance" or "undue burden" within the meaning of [Federal] Rule 26(c)(1). Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition.

*Performance Sales & Mktg. LLC v. Lowe's Cos.*, 2012 U.S. Dist. LEXIS 131394, at *16—18 (W.D.N.C. Sept. 14, 2012); *see also Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 U.S. Dist. LEXIS 16338, at *4, 7 (E.D.N.C. Feb. 10, 2014) (discussing apex doctrine and denying defendant's motion to compel where defendant "failed to overcome its burden of demonstrating that [the plaintiff's officer's] knowledge [was] special or unique").

15. The North Carolina state courts have not formally adopted the apex doctrine, and the Court finds it unnecessary to do so to resolve the current Motion. Indeed, similar to federal district courts under Federal Rule 26, our state trial courts are permitted to limit discovery where "justice requires it" to protect a party or

person, including a corporate executive, "from unreasonable annoyance, embarrassment, oppression, or undue burden or expense." N.C. R. Civ. P. 26(c). *See, e.g., Tennessee-Carolina Transp., Inc. v. Strick Corp.*, 291 N.C. 618, 629, 231 S.E.2d 597, 603 (1977) (holding expert's deposition proper where "deposition would not have delayed the trial or caused the plaintiff or the expert any unreasonable annoyance, embarrassment, oppression, or undue burden or expense" under Rule 26(c)). Our trial courts may also limit discovery if it is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," or is "unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." N.C. R. Civ. P. 26(b)(1a). Although the Court finds federal decisions under the apex doctrine to have persuasive force in resolving Defendants' Motion, the Court nonetheless concludes that an assessment and balancing of the factors contained in Rules 26(b) and 26(c) compels the conclusion that Defendants' Motion should be denied.

16. Defendants allege that subjecting Mr. Lebda to a deposition in this case would be an unreasonable annoyance and an undue burden because he carries heavy responsibilities as the CEO of a publicly traded company with over 300 employees, maintains a demanding work schedule, and regularly travels for LendingTree's business away from Charlotte. (Defs.' Memo. Supp. Def. Mot. Protective Order 8.) Moreover, Defendants contend that Mr. Lebda's personal knowledge is either irrelevant to the matters at issue in this litigation or is not unique and can be

discovered from other LendingTree witnesses that have been deposed and made available to Next Advisor. (Defs.' Reply Memo. Supp. Defs.' Mot. For Protective Order 4–5.)

17. Having carefully reviewed the parties' briefs, supporting exhibits (including emails, deposition transcripts, power point presentations, and other documents[1]), and the arguments of counsel, however, it appears to the Court, that Mr. Lebda has unique, personal knowledge relevant to the issues in dispute in this litigation, including unique, personal knowledge relating to his active role and participation in the attempted acquisition of Next Advisor, LendingTree's strategy and conduct of the negotiations and due diligence attendant to that attempted acquisition, his and LendingTree's plans and efforts in connection with LendingTree's credit card content marketing business and the decision and resulting actions to expand that business, and his role and participation in the origins of the current dispute between Next Advisor and LendingTree.

18. Although Mr. Lebda undoubtedly maintains a very busy schedule and carries heavy responsibilities in his role as LendingTree's CEO, courts have consistently held that if a prospective deponent has relevant knowledge, the mere fact that the prospective deponent is a CEO or is busy does not constitute a showing of good cause for a protective order. *See*, *e.g.*, *Six West Retail Acquisition, Inc. v. Sony Theater Mgmt. Corp*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) ("'highly-placed executives

---

[1] Much of the evidence supporting and opposing Defendants' Motion constitutes confidential business information that the Court has permitted the parties to file under seal. Consequently, the Court declines to discuss the evidence with particularity in this Order and Opinion which is filed on the public record.

are not immune from discovery[, and] 'the fact that an executive has a busy schedule' cannot shield that witness from being deposed.'") (alteration in original) (citation omitted); *Websidestory, Inc. v. Netratings, Inc.*, C06cv408, 2007 U.S. Dist. LEXIS 20481, at *8–9 (S.D. Cal. Apr. 6, 2007) (citing *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) ("[T]he fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery.").[2]

19.    In the absence of any other evidence of "annoyance," "harassment," or "undue burden" to Mr. Lebda, the Court concludes, in the exercise of its discretion, that Plaintiff's need for relevant information from Mr. Lebda in the context of this case clearly outweighs any burden or inconvenience imposed on Mr. Lebda by requiring him to prepare for and submit to a deposition. *See, e.g., Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976) ("One party's need for information must be balanced against the likelihood of an undue burden imposed upon the other."); *see generally Analog Devices, Inc. v. Michalski*, 2006 NCBC LEXIS 16, at *32-38 (N.C. Super. Ct. Nov. 1, 2006) (discussing discovery standards, including the "relative burdens and benefits of [discovery] as contemplated by the balancing test of [Rule 26]").

20.    Accordingly, the Court concludes, in the exercise of its discretion, that Defendants' Motion should be denied and that Plaintiff should be permitted to take the deposition of Mr. Lebda in the circumstances presented in this case. *See, e.g., Six*

---

[2] Our Supreme Court has held that "[d]ecisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989).

*West Retail Acquisition, Inc.*, 203 F.R.D. at 103–06 (denying motion for protective order to prohibit the deposition of CEO, where court could infer from evidence of CEO's attendance at relevant board meetings, executive committee meetings, his fielding of reports from senior management, and his correspondence with plaintiff over the escalating dispute, that he had knowledge relating to the broader issues of the alleged anticompetitive acts at issue); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 146 (D. Mass. 1987) ("as the ultimate authority, [upper level executive's] views . . . may be of far greater probative value on the issue of intent and motive than the views of the lower level executive"); *Gaedeke Holdings VII, LTD v. Mills*, No. 3:15-mc-36-D-BN, 2015 U.S. Dist. LEXIS 72889, at *9 (N.D. Tex. June 5, 2015) (denying plaintiff's motion to quash the deposition of plaintiff's CEO because "a Rule 30(b)(6) deposition or a deposition of lower-ranking personnel cannot reasonably substitute for questioning of [the CEO] personally under [the] circumstances").

## III.

## CONCLUSION

21. **WHEREFORE**, the Court hereby **DENIES** Defendants' Motion for Protective Order and **ORDERS** that Defendants make Mr. Lebda available for deposition. The Court expects Plaintiff and Defendants to work cooperatively to schedule Mr. Lebda's deposition at a time convenient for Mr. Lebda and all counsel but within the time constraints imposed by the current Case Management Order.

**SO ORDERED**, this the 16th day of September, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases