Bradshaw v. Maiden, 2018 NCBC 44.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 14445

JAMES W. BRADSHAW; CARLA O. BRADSHAW; RESORT RETAIL ASSOCIATES, INC.; E.C. BROADFOOT; CHRISTINA DUNN CHANDRA; THOMAS F. EGAN; CHARLES EGGERT; MARK P. GARSIDE; DR. JAMES J. GREEN, JR.; ROBERT K. GRUNEWALD; RONALD HOLMES; DAVID LAUCK; CURT W. LEMKAU, JR.; EVAN MIDDLETON; JOSHUA M. NELSON; CHRISTIAN C. NUGENT; REGINA H. PAKRADOONI, as Executrix of the Estate of PETER B. PAKRADOONI, deceased; FORD PERRY; MARCELLO G. PORCELLI; ADAN RENDON; RICHARD H. STEVENSON; PAUL STOKES; LAWRENCE J. THEIL; R. MITCHELL WICKHAM; WILLIAM H. WILLIAMSON, III; WILLIAM K. WRIGHT, JR.; ALEX M. WOLF; CHAFFIN FAMILY LIMITED PARTNERSHIP; and SOLARIS CAPITAL LLC,

        Plaintiffs,

v.

STEPHEN E. MAIDEN; MAIDEN CAPITAL, LLC; and SS&C TECHNOLOGIES, INC.; successor by merger to SS&C FUND ADMINISTRATION SERVICES, LLC (a/k/a SS&C FUND SERVICES),

        Defendants.

**ORDER AND OPINION ON PLAINTIFFS' MOTION FOR SANCTIONS**

SS&C TECHNOLOGIES, INC.; successor by merger to SS&C FUND ADMINISTRATION SERVICES, LLC,

        Third-Party Plaintiff,

v.

MAIDEN CAPITAL OPPORTUNITY
FUND, LP,

Third-Party Defendant.

1.  **THIS MATTER** is before the Court upon Plaintiffs' Motion for Sanctions Against Defendant SS&C Technologies, Inc. Pursuant to N.C. R. Civ. P. 37 (the "Motion") in the above-captioned case.  Having considered the Motion, the arguments of counsel at the September 22, 2017 hearing on the Motion, and the briefs in support of and in opposition to the Motion, the Court hereby **GRANTS** the Motion, **ENTERS** the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**, and **ORDERS** as follows.

> *Lewis & Roberts, PLLC, by Gary V. Mauney and James A. Roberts, III, for Plaintiffs James W. Bradshaw, Carla O. Bradshaw, Resort Retail Associates, Inc., E.C. Broadfoot, Christina Dunn Chandra, Thomas F. Egan, Charles Eggert, Mark P. Garside, Dr. James J. Green, Jr., Robert K. Grunewald, Ronald Holmes, David Lauck, Curt W. Lemkau, Jr., Evan Middleton, Joshua M. Nelson, Christian C. Nugent, Regina H. Pakradooni, as Executrix of the Estate of Peter B. Pakradooni, deceased, Ford Perry, Marcello G. Porcelli, Adan Rendon, Richard H. Stevenson, Paul Stokes, Lawrence J. Theil, R. Mitchell Wickham, William H. Williamson, III, William K. Wright, Jr., Alex M. Wolf, Chaffin Family Limited Partnership, and Solaris Capital, LLC.*
>
> *Alston & Bird, LLP, by Ryan P. Ethridge, Michael A. Kaeding, and Jessica P. Corley, for Defendant SS&C Technologies, Inc.*

Bledsoe, Judge.

I.

FINDINGS OF FACT

2.  The Court has previously discussed the claims and allegations involved in this action in the Court's Order and Opinion on SS&C's Motion to Dismiss, reported

at *Bradshaw v. Maiden*, 2015 NCBC LEXIS 80 (N.C. Super. Ct. Aug. 10, 2015) (the "Motion to Dismiss Opinion"). This case arises from an alleged multi-million dollar "Ponzi scheme" run by Defendant Stephen A. Maiden ("Maiden") through a hedge fund titled the Maiden Capital Opportunity Fund, LP (the "Fund"). Defendant SS&C Technologies, Inc. ("SS&C") was the Fund's administrator from approximately 2007 through the Fund's collapse in 2013. Plaintiffs were investors in the Fund.

3. Plaintiffs' allegations against SS&C center on SS&C's performance of its administrative duties. To give three examples, Plaintiffs contend that SS&C did not follow standard GAAP procedures, did not obtain reasonable documentation to verify the accuracy of information provided to SS&C by Maiden, and continued issuing capital statements to Plaintiffs despite SS&C's knowledge of record inaccuracies. *Bradshaw*, 2015 NCBC LEXIS 80, at *16, *22–23. As a result of these practices, Plaintiffs allege that SS&C communicated false information to Plaintiffs and caused Plaintiffs to suffer financial loss by allowing Maiden's Ponzi scheme to continue unnoticed. *Id.* at *9–10.

4. In an effort to discover relevant information about the policies and procedures SS&C had in place while it was administering the Fund, Plaintiffs served SS&C with Plaintiffs' First Set of Interrogatories and First Requests for Production of Documents (the "Requests for Production") on August 21, 2015. Of those requests, Requests 20–22 and 35 sought the following:

> 20. All writings, recordings, and photographs that relate or refer to SSC's policies, standards, and practices from 2006 to 2015 with respect to hedge fund administration.

21. All writings, recordings, and photographs that relate or refer to SSC's policies, standards, and practices from 2006 to 2015 that apply to SSC's accounting work for hedge funds.

22. All writings, recordings, and photographs that relate or refer to SSC's policies, standards, and practices from 2006 to 2015 that apply to SSC's record keeping for hedge funds.

. . . .

35. All writings, recordings, and photographs that relate or refer to SSC's policies, procedures, and standards from 2006 to 2015 for entering into administrative and/or accounting engagements with hedge funds.

(Pls.' Br. Supp. Mot. Sanctions Ex. 2, at 8–9, 11, ECF No. 128.2.)

5.     In response to Plaintiffs' Requests for Production, SS&C agreed to produce all the documents SS&C contended it had that "relate[d] directly to its work for the Fund." (Mem. Law Opp'n Pls.' Mot. Compel Disc. Def. 12, ECF No. 68.) SS&C objected to Plaintiffs' Requests 20–22 and 35, however, arguing that these requests were vague, unduly burdensome, overly broad, and not reasonably limited in temporal scope. (Mem. Law Opp'n Pls.' Mot. Compel Disc. Def. Ex. 2, at 31–35, 46–48 [hereinafter "Answers to Requests"], ECF No. 71.) In addition, SS&C contended that Requests 20–22 and 35 were not relevant to any remaining claims or defenses in the case as a result of the Court's Motion to Dismiss Opinion. (Answers to Requests 31–35, 46–48.)

6.     The Motion to Dismiss Opinion altered the course of this case in several ways. Plaintiffs brought claims against SS&C for breach of fiduciary duty, aiding and abetting common law fraud, gross negligence, grossly negligent misrepresentation, aiding and abetting constructive fraud, violation of N.C. Gen.

Stat. § 78A-52(c)(2), civil conspiracy, and punitive damages. *Bradshaw*, 2015 NCBC LEXIS 80, at *10. With respect to Plaintiffs' claim for breach of fiduciary duty, the Court concluded that SS&C's duties were limited under North Carolina law to the duties SS&C was obligated to perform under the agreement between SS&C and the Fund. *Id.* at *36. Consequently, and because Plaintiffs had failed to plead that Plaintiffs reposed confidence in SS&C or that SS&C had occupied a position of dominance over Plaintiffs, no fiduciary duty existed between SS&C and Plaintiffs. *Id.* Accordingly, the Court dismissed Plaintiffs' claim for breach of fiduciary duty. *Id.* The Court also dismissed, for unrelated reasons, Plaintiffs' claim for aiding and abetting common law fraud. *Id.* at *38.

7. With respect to Plaintiffs' claim for gross negligence, the Court concluded SS&C's motion to dismiss should be denied in a limited capacity:

> [T]he Court concludes that SS&C's Motion to Dismiss Plaintiffs' gross negligence claim . . . should be denied insofar as Plaintiffs' claim is based on allegations that SS&C knowingly and willfully disseminated false and inaccurate information to Plaintiffs, knowingly and willfully failed to utilize GAAP and/or other applicable accounting standards required of SS&C under the [agreement with the Fund] in preparing the financial information SS&C provided to Plaintiffs, knowingly and willfully manipulated the Fund's accounting, and all other willful and knowing acts Plaintiffs plead that were in violation of SS&C's duties under the [agreement with the Fund] and applicable law.

*Id.* at *23–24. The Court also limited Plaintiffs' claim for grossly negligent misrepresentation in this manner:

> [T]he Court will allow the claim to proceed at this early stage and will assume for purposes of this Motion that a claim for grossly negligent misrepresentation is properly stated by alleging the elements of a claim for negligent misrepresentation, together with allegations of willful and wanton

conduct, similar to the allegations necessary to support Plaintiffs' claim for gross negligence as discussed above.

*Id.* at \*26. The Court allowed Plaintiffs' claims for aiding and abetting constructive fraud, violation of section 78A-56(c)(2), civil conspiracy, and punitive damages to proceed to discovery. *Id.* at \*48.

8. In responding to Plaintiffs' Requests 20–22 and 35, SS&C relied on the above-quoted portions of the Motion to Dismiss Opinion to assert, in essence, that "any SS&C internal policies, standards and practices applicable to [the information sought by Requests 20–22 and 35] are not relevant to the remaining claims" because those claims "are strictly limited to knowing and willful violations of the standards and duties imposed on SS&C under the terms of the [agreement with the Fund]." (Answers to Requests 32, 34–35, 47.) As a result, SS&C argued, it was not required to produce further documents in response to Requests 20–22 and 35.

9. Not satisfied with SS&C's answers and objections, Plaintiffs filed a motion to compel (the "Motion to Compel"). Plaintiffs countered SS&C's arguments by contending that Requests 20–22 and 35 sought relevant information because "a pattern of noncompliance with policies and standards is a relevant factor in the determination of willful or wanton negligence." (Pls.' Reply Br. Supp. Mot. Compel Disc. 10, ECF No. 90.)

10. At the April 27, 2016 hearing on the Motion to Compel, the Court questioned counsel for SS&C as follows:

> All right. [Counsel for SS&C], let me ask you, for example, with No. 22, he's asking for documents that relate to the policies, standards, and practices that apply to SS&C's recordkeeping for hedge funds. It seems

beyond dispute that SS&C had a recordkeeping obligation under the [agreement with the Fund]. So is SS&C's position that there are no such policies, standards, and practices?

(Pls.' Br. Supp. Mot. Sanctions Ex. 10, at 32 [hereinafter "Tr."], ECF No. 128.10.) In response, counsel for SS&C stated, "There are no documents, correct." (Tr. 32.) SS&C took the position that there were no documents to be produced pursuant to Plaintiffs' discovery requests because SS&C allegedly had no written policies, standards, and practices that related to the work it did for the Fund. (Tr. 32–33.)

11. After further discussion on this point between the Court and SS&C's counsel, counsel for Plaintiff interjected:

> Your Honor, here's the problem that I've got with, you know, how we're approaching this. They're making a relevancy determination on what policies and procedures apply to what they were supposed to be doing for the [Fund]. I mean, we're in the discovery stage. . . .
>
> . . . [T]o have them say we made this relevancy determination without having an opportunity ourselves to look at the documents seems a little unfair, particularly at the discovery stage.

(Tr. 33–34.)

12. Following this statement from Plaintiffs' counsel, the Court attempted to clarify SS&C's position by asking whether SS&C had policies, standards, and practices that related to hedge fund administration, accounting, or engagement in general. (Tr. 34–37.) SS&C stated that there we no documents responsive to those broad inquiries either. (Tr. 34–37.) In light of SS&C's representations, the Court stated it "would be inclined to grant the Plaintiffs' motion as to [Requests 20–22 and 35]." (Tr. 37.) The Court further remarked, "It appears that's no skin off [SS&C's] back because you say there are no such policies, practices, standards. And I suppose

if you all engage in further discovery . . . [and] you think that that's not an accurate statement, then I guess we'll come back here."  (Tr. 37.)

13.    The Court memorialized its oral ruling in the Order on Motions[1] to Compel entered May 20, 2016 (the "Order Compelling Production").  In the Order Compelling Production, after noting SS&C's contentions, the Court concluded that Plaintiffs' Requests 20–22 and 35 were reasonably calculated to lead to the discovery of admissible evidence and granted Plaintiffs' Motion to Compel as to those requests:

> Plaintiffs' Requests No. 20–22 and 35 seek: "Documents that refer or relate to SS&C's policies, standards, and practices that apply to: (1) SS&C's work in hedge fund administration (RPD 20), (2) SS&C's accounting work for hedge funds (RPD 21), and (3) SS&C's record keeping for hedge funds (RPD 22).  Plaintiffs also requested documents that refer or relate to SS&C's policies and standards for entering into administration or accounting engagements with hedge funds (RPD 35)."  Defendants contend that these requests are irrelevant because the Court's August 10 Order determined that the duties SS&C owed to Plaintiffs were largely constrained by the [agreement] entered into between SS&C and the Fund.  Defendants also take the position that there are no responsive documents that have not already been produced.  The Court concludes that these requests are reasonably calculated to lead to admissible evidence, and the Court therefore grants Plaintiffs' Motion as to Requests 20–22 and 35. [2]

(Order Mots. Compel 4, ECF No. 102 (emphasis omitted) (citations omitted).)

---

[1] The Court also ruled on a motion to compel brought by SS&C.  The details of that motion are irrelevant to the current matter before the Court.

[2] Rule 26 of the North Carolina Rules of Civil Procedure permits "[p]arties [to] obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."  N.C. R. Civ. P. 26(b)(1).  "To be relevant for purposes of discovery, the information [sought] need only be 'reasonably calculated' to lead to the discovery of admissible evidence." *Shellhorn v. Brad Ragan, Inc.,* 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978)

14. Approximately one year later, in June 2017, SS&C conducted its depositions of expert witnesses retained by Plaintiffs. Plaintiffs' experts were prepared to testify that SS&C lacked relevant policies and procedures. In questioning these experts, counsel for SS&C referred to SAS 70 or SOC-1 reports ("SAS 70-type audits") and asked how the existence of those reports would influence the experts' opinions. (Pls.' Br. Supp. Mot. Sanctions Ex. 14, Dep. Joseph P. Belanger 278–81, Dep. Frank Buckless 207, ECF No. 128.14.) SAS 70s or SOC-1s are reports prepared by third parties on policies and procedures placed in operation at service organizations like SS&C. (Pls.' Br. Supp. Mot. Sanctions Ex. 6, ECF No. 128.6.) At least one of SS&C's previous deponents, George Schnell, had mentioned these audits were done, but SS&C had not indicated prior to the depositions of Plaintiffs' experts that SS&C believed the audit documents were relevant to Plaintiffs' experts' opinions regarding SS&C's policies and procedures. SS&C contends that it did not so indicate because it was unaware that Plaintiffs' experts were going to offer opinions based on SS&C's alleged failure to have policies or procedures in place.

15. Following the depositions, SS&C produced 417 pages of SAS 70-type audits covering SS&C's administration and accounting policies and procedures for the years 2008–12. These documents purportedly lent credence to SS&C's case. During a later deposition, SS&C's expert witness testified that although he had already formed the majority of his opinions, reviewing SS&C's SAS 70-type audits reinforced and provided further support for those opinions.

16.     Plaintiffs also discovered, through their own efforts, additional SAS 70-type audits for the years 2006 and 2007. Later still, Plaintiffs obtained policy and procedure manuals generated by SS&C's Investor Relations business unit through a search of New York courthouse records.

17.     Following these developments, Plaintiffs initiated a Business Court Rule ("BCR") 10.9 request for a telephone conference. In light of the nature of the issues reported by Plaintiffs, the Court exercised its discretion under BCR 10.9(b)(1) and ordered Plaintiffs to file a formal motion and brief concerning the matters discussed in their 10.9 statement. Plaintiffs then filed the Motion, asking the Court to strike SS&C's answer and affirmative defenses or enter judgment by default against SS&C.

18.     The Motion is fully briefed, a hearing has been held, and the Motion is ripe for determination.

II.

CONCLUSIONS OF LAW

19.     Rule 37(b) of the North Carolina Rules of Civil Procedure permits a court to order a variety of sanctions against a party who fails to obey a court order regarding discovery. *See F.E. Davis Plumbing Co. v. Ingleside W. Assocs.*, 37 N.C. App. 149, 152, 245 S.E.2d 555, 557 (1978). These sanctions include, but are not limited to, the establishment of facts, the exclusion of evidence, the striking out of pleadings or parts thereof, or the dismissal of an action. N.C. R. Civ. P. 37(b)(2).

20.     "The imposition of sanctions under Rule 37 'is in the sound discretion of the trial judge and cannot be overturned absent a showing of abuse of that discretion.'"

*In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 246, 618 S.E.2d 819, 826 (2005) (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 631, 422 S.E.2d 686, 690 (1992)).  The trial court will only be held to have abused its discretion "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *E. Brooks Wilkins Family Med., P.A. v. WakeMed*, 244 N.C. App. 567, 578, 784 S.E.2d 178, 185 (2016).

21.    Upon motion by a party, and in lieu of dismissal or other severe sanctions, or in addition to them, Rule 37(b)(2) provides that the trial court shall "require the party failing to obey the [discovery] order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* at 578, 784 S.E.2d at 185–86 (quoting N.C. R. Civ. P. 37(b)(2)).  Because awarded expenses are required to be "reasonable, the record must contain findings of fact to support the award of any expenses, including attorney's fees." *Benfield v. Benfield*, 89 N.C. App. 415, 422, 366 S.E.2d 500, 504 (1988).

22.    Plaintiffs contend the newly discovered and produced documents prove SS&C disobeyed the Order Compelling Production.  In particular, Plaintiffs argue that the existence of the SAS 70-type audits necessarily means SS&C must have written policies and procedures a third party can audit—policies and procedures that have not been produced.  Plaintiffs also argue SS&C's failure to turn over the SAS 70-type audits earlier and SS&C's failure to produce the recently discovered policy manuals at any time are direct violations of the Court's Order Compelling Production.

23.    In response, SS&C asserts that it did not violate the Order Compelling Production.  SS&C argues that the Court did not compel the production of audit forms or policy manuals because Plaintiffs' discovery requests sought "SS&C's policies governing the services SS&C provide[d] to clients like the . . . Fund" and SS&C "did not have other written policies or procedures governing these services."  (Pls.' Br. Supp. Mot. Sanctions Ex. 16, ECF No. 128.16.)  SS&C now acknowledges that some of its business units that SS&C claims did not work with the Fund do have written policies and procedures.  These include the policy manuals Plaintiffs obtained.  SS&C maintains that it was not required to produce these policies or procedures, however, because they were not applicable to SS&C's Fund Services NY unit—the unit that worked on the Fund.  (*See* Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 9, ECF No. 132.)  SS&C further argues that the SAS 70-type audit documents, which SS&C acknowledges did apply to SS&C's Fund Services NY unit, were not required to be produced because they "are an independent auditor's opinion regarding its examination of SS&C's internal controls" and "are not SS&C's own written policies or procedures."  (Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 7.)

24.    Based on its review of the record and the arguments of counsel, the Court cannot agree with SS&C.  To the contrary, the Court concludes that SS&C failed to comply with the Order Compelling Production and that Plaintiffs are entitled to reasonable expenses, including attorneys' fees, directly attributable to that failure.

25.    Repeatedly throughout this dispute, SS&C has maintained that it was only required to produce written policies or procedures relating to the work it contends it

did for the Fund. While a selective reading of the April 27, 2016 hearing transcript can be used to support SS&C's argument, the larger context of the discussion at that hearing and the plain language of both Plaintiffs' Requests for Production and the Court's Order Compelling Production demonstrate SS&C's real discovery obligations were broader.

26. The fact the Order Compelling Production was not limited to the written policies and procedures SS&C contends are applicable to its work for the Fund should have been apparent to counsel for SS&C following the April 27, 2016 hearing. SS&C points to one statement by the Court at this hearing to support SS&C's limited view of its obligations: "[I]t seems to me the Plaintiff is entitled to receive any policies, standards, and practices that exist for the services that the Defendant provided." (Tr. 33.) While this quote is accurate, it was not offered as a final determination. Indeed, almost immediately thereafter Plaintiffs' counsel voiced concerns that SS&C was narrowly interpreting Plaintiffs' discovery requests and was "making a relevancy determination on what policies and procedures appl[ied] to what [SS&C was] supposed to be doing for the [Fund]." (Tr. 33.) That concern prompted the Court to inquire "are there policies, standards, and practices that relate to hedge fund administration that SS&C believes exist that control and govern their conduct, but . . . just don't control and govern their conduct in this particular representation?" (Tr. 34.) In other words, the Court directly and specifically inquired as to whether SS&C had policies and procedures that were followed in other hedge fund representations generally but not the one at the center of this litigation. In response,

counsel for SS&C stated, "I believe the answer to that is no." (Tr. 34.) The Court asked similar questions with respect to SS&C's other obligations and received negative answers to each. (Tr. 35–37.)

27. At one point during this exchange, SS&C reframed its answers: "Policies and procedures related *to the work we did here*, recordkeeping, administration . . . do not exist." (Tr. 35 (emphasis added).) This caused Plaintiffs' counsel to interject again:

> But, your Honor, the problem is he's saying we're making a determination as to what relates to the work we did here. I mean, we've got a different -- a vastly different view of what [SS&C's] obligations were as the administrator for the [Fund]. . . . [D]on't let them determine in the discovery phase of this case what is a relevant policy or procedure.

(Tr. 35.) The Court then stated, "I thought that, you know, [that] hedge fund administration was probably the broadest description, and [SS&C] is saying they don't have any," referring to the Court's previous question about policies, standards, and practices relating to hedge fund administration. (Tr. 35–36.) Counsel for SS&C then responded that unless the requests "related to . . . fund[] administration as anything [SS&C does], meaning all of our documents," there were "no documents that fit that description" for the requested time period.[3] (Tr. 36.)

---

[3] SS&C repeats this argument in its brief, asserting that "[t]aken literally, [Plaintiffs'] Requests seek almost every document at SS&C." (Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 3.) While the Court is certain SS&C is correct that it has "written policies governing certain aspects of its business (everything from human resources to cybersecurity)," (Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 2), the Court is likewise confident—and SS&C's subsequent document productions since the September 22, 2017 hearing confirm—that certain documents at SS&C refer or relate to the hedge fund administration, accounting, and recordkeeping parts of SS&C's business and that these documents are distinguishable from those that do not.

28.     Plaintiffs' complaints about SS&C's attempts to limit requested discovery to what SS&C considered applicable, and the Court's questions about a wider range of documents than those concerning policies and practices SS&C alleges were applicable to the Fund, make SS&C's continued practice of interpreting the Court's Order Compelling Production in a narrow manner unjustifiable.  The plain language of the Order Compelling Production shows Plaintiffs requested—and the Court ordered—that SS&C produce:

> [d]ocuments that refer or relate to *SS&C's* policies, standards, and practices that apply to: (1) *SS&C's* work *in hedge fund administration* (RPD 20), (2) *SS&C's* accounting work *for hedge funds* (RPD 21), and (3) *SS&C's* record keeping *for hedge funds* (RPD 22) . . . [as well as] policies and standards for entering into administrative or accounting engagements *with hedge funds.*

(Order Mots. Compel 4 (emphasis added).)  The Order Compelling Production was not limited to written copies of policies SS&C contends were applicable to the finite number of services provided to the Fund by one of SS&C's business units, nor was it limited to documents written by SS&C employees.  The scope of the Order Compelling Production included documents referring to or relating to several general categories of services that SS&C offers to hedge fund clients.  The objections SS&C initially made to Plaintiffs' Requests 20–22 and 35 suggest SS&C understood the breadth of these general categories.  (Answers to Requests 32, 34–35, 47.)  SS&C's apparent belief that the Order Compelling Production somehow limited SS&C's obligations under Plaintiffs' requests is unsupported.

29.     Further, neither the Court's statement at the April 27, 2016 hearing—that the oral ruling would be "no skin off [SS&C's] back"[4]—nor the Order Compelling Production acknowledged, as SS&C contends they did, (*see* Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 7), that SS&C had produced all necessary responsive documents as of the hearing.   Instead, the statements acknowledged only that SS&C had repeatedly represented to the Court that no responsive documents existed and, thus, that SS&C would not be required to make further productions *if it was indeed true* that all responsive documents encompassed by Plaintiffs' requests had already been produced.

30.     Finally, any confusion resulting from the colloquy between the Court and SS&C at the hearing should have been completely resolved by the express wording of the Order Compelling Production, which contained unambiguous and unequivocal language.   To the extent SS&C believed the Court's oral ruling and the Order Compelling Production were inconsistent, or in the event SS&C discovered it had documents it previously characterized as nonexistent, SS&C's recourse was to file a motion for clarification or reconsideration of the Order Compelling Production. Instead of taking this course, SS&C unilaterally created a limitation on the scope of its obligations arising from the Order Compelling Production.

---

[4] "One party's need for information must be balanced against the likelihood of an undue burden imposed upon the other." *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976).  The Court's "no skin off your back" statement reflected the Court's conclusion— based on SS&C's counsel's representations that no responsive documents remained to be produced—that ordering SS&C to produce the requested documents relating to its general hedge fund services would not impose an undue burden on SS&C.

31.     Plaintiffs have now belatedly obtained, through both SS&C's and Plaintiffs' efforts, documents referring to or relating to policies, procedures, and practices that apply to SS&C's administration, accounting, and recordkeeping services for hedge funds. Some of these documents allegedly apply to business units other than those working with the Fund. Some—such as the SAS 70-type audit documents—refer to the policies and procedures of the specific business unit SS&C contends worked for the Fund. Almost all refer or relate to policies or procedures applicable to SS&C's work regarding hedge funds. The Court finds that, in failing to timely produce these and related documents, SS&C failed to comply with the Order Compelling Production. For the reasons explained above, this failure was not substantially justified.

32.     While nothing in the record leads the Court to conclude at this time that SS&C's conduct was motivated by bad faith, a lack of bad faith does not shield SS&C from all possible sanctions. Rather, when "a party compelled to provide discovery [fails] to do so, an award of reasonable costs is *mandatory*" unless the failure is substantially justified or an award would be unjust due to other circumstances. *Caruso v. Hennessy*, No. COA06-646, 2007 N.C. App. LEXIS 578, at *8–9 (N.C. Ct. App. Mar. 20, 2007) (citing *Kent v. Humphries*, 50 N.C. App. 580, 590, 275 S.E.2d 176, 183 (1981)); *see* N.C. R. Civ. P. 37(b)(2) (stating "the court shall require" payment of expenses, including attorneys' fees, "unless the court finds that the failure was substantially justified" or that the award is unjust because of the circumstances). The provisions of Rule 37 that mandate an award of reasonable expenses are not meant

to punish but to reimburse a successful movant. *See Benfield*, 89 N.C. App. at 422, 366 S.E.2d at 504. Here, the Court concludes Plaintiffs are entitled to this reimbursement.

33. SS&C's failure to comply with the Court's Order Compelling Production relates to a key issue in this case. As a result of SS&C's failure, Plaintiffs have spent a significant amount of their own time and money looking into the existence and location of responsive documents—in particular, by attempting to address SS&C's discovery deficiencies through inquiries in multiple depositions and by paying for the investigation and evaluation of a significant number of records. While the Court has no reason to believe that SS&C's counsel intentionally defied the Court's Order Compelling Production, the Court is nonetheless troubled by SS&C's failure to comply with its obligations to search for and produce documents responsive to the Requests for Production and subject to production under the Order Compelling Production, given the plain terms of each.

34. Accordingly, Plaintiffs shall be permitted to recover reasonable expenses, including attorneys' fees, directly attributable to SS&C's failure to produce the requested documents following the Order Compelling Production. *See WakeMed*, 244 N.C. App. at 579, 784 S.E.2d at 186 (affirming the trial court's award of fees "attributable to the [defendants'] efforts related to [the plaintiff's] deficient discovery"); *American Tel. & Tel. Co. v. Griffin*, 39 N.C. App. 721, 727, 251 S.E.2d 885, 888 (1979) (affirming the trial court's award of reasonable expenses caused by a failure to comply with a discovery order); *Kornegay v. Aspen Asset Grp., LLC*, 2007

NCBC LEXIS 5, at *17 (N.C. Super. Ct. Feb. 28, 2007) ("At a minimum, however, the Court 'shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure[.]'" (quoting N.C. R. Civ. P. 37(b)(2))), *aff'd*, 204 N.C. App. 213, 693 S.E.2d 723 (2010).

35.     The Court has considered Plaintiffs' request for more severe sanctions—in particular, that the Court strike SS&C's answer and affirmative defenses or enter judgment by default against SS&C—and concludes that such relief is not appropriate on the current record, which lacks evidence of SS&C's participation in intentional evasion or other bad faith behavior.  The Court will not hesitate to impose more severe sanctions, however, should SS&C fail to abide by the Court's orders hereafter or if the Court later becomes convinced that SS&C fully understood its obligations under the Order Compelling Production yet failed to produce its responsive documents.

36.     As a final argument, SS&C claims that Plaintiffs brought this dispute to the Court before fulfilling their meet-and-confer obligation under BCR 10.9(b).  As stated by SS&C, Plaintiffs initiated a conference regarding this dispute to address the existence of unproduced documents before submitting a BCR 10.9 statement to the Court.  (Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 5.)  At that conference, counsel for Plaintiffs asserted that there must be written policies and procedures that had not been produced, arguing that the third party creating the SAS 70-type audits could not have audited unwritten policies.  (Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 5.)  SS&C's counsel disagreed but stated it would ask SS&C to confirm that the SAS 70-type audits did not, "in fact, reference written policies and procedures applicable to

the [Fund] engagement." (Def.'s Mem. Law Opp'n Pls.' Mot. Sanctions 5–6.) Because Plaintiffs did not wait for SS&C to conduct this inquiry, SS&C believes Plaintiffs' Motion should be denied.

37.     The Court disagrees that Plaintiffs failed to follow the procedures set out in BCR 10.9(b). Plaintiffs initiated a conference with SS&C prior to submitting their BCR 10.9 e-mail to the Court in an attempt to avoid bringing this discovery dispute for judicial resolution. When Plaintiffs asked about policies and procedures referred to in the SAS 70-type audits, they received SS&C's familiar denial that written policies or procedures *applicable to the Fund representation* existed. This was the same answer that Plaintiffs had taken issue with at the prior hearing—an answer in which SS&C unilaterally altered the scope of Plaintiffs' requests in a manner contrary to the Court's Order Compelling Production. Plaintiffs were not required to wait while SS&C confirmed an answer that was not a response to Plaintiffs' query.

## III.

## CONCLUSION

38.     **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

a. As to the requested documents:

i. The parties are currently engaged in ongoing discussions regarding the production of documents responsive to Plaintiffs' Requests 20–22 and 35 pursuant to the Court's September 22, 2017 oral order, the October 16, 2017 Order to Meet and Confer,

and multiple subsequent orders imposing similar obligations and narrowing and focusing the scope of the required production under the Order Compelling Production. The provisions of the Court's September 22, 2017 oral order, the October 16, 2017 Order to Meet and Confer, and all subsequent orders imposing similar obligations, including, most recently, the April 2, 2018 Order to File Joint Report, are incorporated into this Order and shall control the production of these responsive documents.

ii. SS&C shall make witness(es) available for a Rule 30(b)(6) deposition concerning the newly produced documents at SS&C's expense, should Plaintiffs wish to conduct such a deposition.

b. As to Plaintiffs' expenses:

i. SS&C shall pay to Plaintiffs their reasonable expenses, including their reasonable attorneys' fees, directly attributable to SS&C's failure to comply with the Order Compelling Production that were incurred between the entry of the Order Compelling Production and SS&C's final, above-ordered production.

ii. SS&C shall not, however, be required to pay Plaintiffs their expenses attributable to other aspects of Plaintiffs' prosecution of this action, including, in particular, Plaintiffs' expenses attributable to written, document, or deposition discovery to the

extent that discovery would have occurred regardless of SS&C's compliance with the Order Compelling Production.

iii. Plaintiffs shall have through and including May 25, 2018 to file all evidence and materials in support of Plaintiffs' request for reasonable expenses, including attorneys' fees, as well as a supporting brief of no more than 2,500 words.

iv. SS&C may agree to satisfy Plaintiffs' request for expenses by filing a document to that effect, and any payment by agreement shall be made by SS&C on or before June 8, 2018 or at such time as the parties may agree.

v. In the event SS&C does not agree with Plaintiffs' request for expenses, SS&C shall file its brief in opposition to the amount of Plaintiffs' requested expenses, including Plaintiffs' attorneys' fees, together with any supporting materials, no later than June 8, 2018. That brief shall be of no more than 2,500 words.

vi. Plaintiffs will be permitted to file a reply brief in further support of its request for expenses no later than June 18, 2018. That brief shall be of no more than 1,250 words.

vii. All briefs shall otherwise comply with BCR 7.8.

viii. If necessary, the Court will set a hearing on Plaintiffs' request for reasonable expenses by separate order.

**SO ORDERED**, this the 9th day of May, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases